IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JACKIE G. MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-cv-424-MJR |
| | ) |
| WILLIAMSON COUNTY, ILLINOIS, | ) |
| MANDY COMBS, MARY KILLMAN, | ) |
| and CASA, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**REAGAN, District Judge:**

This case represents Plaintiff Jackie Miller's fourth attempt to seek relief from this Court in connection with his incarceration and pending state criminal charges in Williamson County, Illinois.[1]  Each action has been filed by Miller's attorney, Joshua M. Bradley.  In the instant case, filed on April 10, 2014, Miller seeks a writ of mandamus ordering Defendants to turn over to him "all documents, phone records, and conversations related to his case" (Doc. 2, p. 3).

**Applicability of the Prison Litigation Reform Act (PLRA)**

The petition alleges that Miller is currently in custody in Williamson County, awaiting the resolution of one or more pending criminal charges (Doc. 2, ¶ 12).  Thus, he is a

---

[1] Plaintiff first filed two habeas corpus actions.  He requested immediate release from custody in *Miller v. Williamson County Correctional Center, et al.*, Case No. 13-cv-1078-DRH (S.D. Ill., filed Oct. 17, 2013, and dismissed Jan. 21, 2014).  He then sought an order to dismiss all criminal charges against him in Williamson County, in *Miller v. Williamson County Correctional Center, et al.*, Case No. 14-cv-333-DRH (S.D. Ill., filed March 14, 2014, and dismissed April 9, 2014).  Next, on March 26, 2014, he filed a civil rights action pursuant to 42 U.S.C. § 1983, *Miller v. Williamson County, Illinois, et al.*, Case No. 14-cv-385-MJR.  That case was dismissed pursuant to 28 U.S.C. § 1915A on April 22, 2014, earning Miller a "strike" under the Prison Litigation Reform Act (PLRA).  *See* 28 U.S.C. § 1915(g).

"prisoner" within the meaning of the Prison Litigation Reform Act (PLRA). Pub. L. 104-134; *see* 42 U.S.C. § 1997e(h). Civil actions filed by prisoners are subject to a preliminary merits review pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A. If a prisoner has three or more cases dismissed for the reasons listed in § 1915A(b), his ability to file future suits *in forma pauperis* is curtailed. 28 U.S.C. § 1915(g).

A mandamus action may or may not be a "civil action" subject to the PLRA, depending on the nature of the relief sought and whether it pertains to an underlying civil or criminal matter. The Seventh Circuit has reasoned that where mandamus relief is sought against a judge presiding over a criminal trial, the action is a "procedural step in the criminal litigation," and thus is not a "civil action" under the PLRA. *Martin v. United States*, 96 F.3d 853, 854 (7th Cir. 1996) (citing *In re Nagy*, 89 F.3d 115, 116-17 (2d Cir. 1996) (PLRA did not apply to criminal defendant's mandamus action against judge to force ruling on pending recusal motion); *Green v. Nottingham*, 90 F.3d 415, 417-18 (10th Cir. 1996) (prisoners should not be allowed to evade PLRA provisions by framing pleading as petition for mandamus)). If the PLRA were applied in a blanket fashion to all mandamus actions, a prisoner who had incurred three "strikes" for having brought meritless civil suits would be prevented from seeking mandamus in a criminal case unless he could fully prepay the filing fee. This result was not what Congress likely

intended, because the purpose of the PLRA was to curtail the volume of frivolous civil rights suits. *Id*.

On the other hand, the Seventh Circuit approved the imposition of the PLRA consequence of a "strike" upon the dismissal of a criminal-related mandamus action for lack of merit. *Banks v. People of the State of Illinois*, 258 F. App'x 902 (7th Cir. 2007) (mandamus action seeking federal court intervention in state criminal proceedings based on purported violation of state constitution dismissed for failure to state a claim; prisoner incurred one "strike" from district court and another for bringing frivolous appeal). As in the case at bar, the mandamus in *Banks* was not directed at the presiding judge, nor did it seek to compel the state court to make a ruling on a matter pending before it.

In the instant case, Miller is seeking a mandamus order for relief in the context of his pending criminal prosecution. Unlike the petitioner in *Martin*, Miller has fully prepaid the filing fee, thus the *in forma pauperis* provisions of the PLRA do not come into play. However, as in *Marion*, Miller has not named the presiding judge as a party, he does not seek an order directing the judge to act, and the case does not involve a procedural matter integral to the criminal prosecution. Instead, the targets of the action are an assistant prosecutor and another employee in the State's Attorney's office, as well as the county itself and a non-profit children's advocacy organization. Further, Miller brought this case after bringing three other unsuccessful actions in this Court against essentially the same Defendants.[2] In consideration of the concerns in *Martin* and in light of *Banks*, the Court concludes that this mandamus case falls within the scope of a "civil action" as contemplated by the PLRA. If it were exempt from the PLRA provisions, a loophole would be created by which the mere re-labeling of an action as one for

---

[2] The civil rights action, 14-cv-385-MJR named the same four defendants as are named herein. Both habeas actions named as respondents the Williamson County Correctional Center, Williamson County Sheriff Bennie Vick, and Williamson County State's Attorney Charles Garnati.

mandamus would allow prisoners to evade the PLRA requirements and consequences. *See In re Washington*, 122 F.3d 1345 (10th Cir. 1997); *In re Tyler*, 110 F.3d 528, 529 (8th Cir. 1997); *Green v. Nottingham*, 90 F.3d 415, 418 (10th Cir. 1996). Accordingly, the merits screening provisions of § 1915A apply, and the dismissal of this action may count as a "strike" within the meaning of §1915(g).

Mandamus is an extraordinary remedy, appropriate only under limited circumstances. *See Burnett v. Bowen*, 830 F.2d 731, 739 (7th Cir. 1987). Further, in the absence of proper jurisdiction, this Court is without power to grant any relief, extraordinary or not. As shall be discussed below, after full consideration of the petition, the Court concludes that it must be dismissed.

**The Petition for Writ of Mandamus**

Miller reiterates many of the allegations made in his unsuccessful petitions for habeas corpus relief, as well as in the dismissed civil rights action. In fact, paragraphs 1-14 of the instant pleading are virtually identical to paragraphs 1-14 of the § 1983 complaint in *Miller v. Williamson County, Illinois, et al.*, Case No. 14-cv-385-MJR. The only differences are the allegation that Defendant Williamson County, Illinois, "governs the States Attorney of Williamson County" (Doc. 2, ¶ 2), and the omission of references to exhibits in paragraphs 8 and 12.

As in the civil rights action, he names as Defendants the "municipal corporation" of Williamson County, Illinois; individual Defendants Mandy Combs (a Williamson County Assistant State's Attorney) and Mary Killman (an employee of the State's Attorney and CASA);

and finally CASA[3] (an organization of which Defendant Killman is a member and employee) (Doc. 2, ¶¶ 2-5).

Miller states that he had been previously held in jail for 185 days on a still-pending Williamson County misdemeanor charge (Case No. 12-CM-363) (Doc. 2, ¶ 7). The Williamson County State's Attorney filed this or some other charge(s)[4] after Miller's bond was reinstated and he was released from custody on a Franklin County charge (Doc. 2, ¶¶ 8, 9). The Williamson County charge was based on the same conduct that had prompted the Franklin County petition to revoke Miller's bail (this petition was dismissed when the bond was reinstated). When he filed the charge, the Williamson County State's Attorney knew the Franklin County bond petition had been dismissed (Doc. 2, ¶¶ 8, 9, 11). Miller alleges that in bringing this charge, the Williamson County State's Attorney violated Illinois Rule of Professional Conduct (RPC) 3.8[5] (Doc. 2, ¶ 11).

Miller is now held on a "separate charge" in Williamson County, brought days after his plea agreement disposing of the Franklin County case (Doc. 2, ¶ 12). He includes no description of the nature of this criminal charge. He then claims that the Williamson County

---

[3] CASA is the acronym for Court Appointed Special Advocates of Williamson County, a non-profit organization which provides volunteers, appointed as officers of the court, to advocate for children involved in court proceedings. *See* www.casawilliamsoncounty.com (last visited May 1, 2014).

[4] This paragraph merely refers to "said charges." No other case numbers are included in the petition, thus it is impossible to tell which allegation refers to which of Miller's "various cases" (*See* Doc. 2, ¶ 16). Miller's civil rights complaint included references to at least four separate criminal cases in Williamson County.

[5] Illinois Rule of Professional Conduct 3.8 sets standards of conduct for public prosecutors, particularly where the prosecutor's action would affect the constitutional rights of a criminal defendant. The official comment to RPC 3.8 includes the language quoted by petitioner ("The States Attorney in his official capacity is the representative of all people, including the defendant, and it was as much his duty to safeguard the constitutional rights of the defendants [sic] those of any other citizen. *People v. Cochran*, 313 Ill. 508, 526 (1924)." (Doc. 2, ¶13). The comment further states that, "Rule 3.8 is intended to remind prosecutors that the touchstone of ethical conduct is the duty to act fairly, honestly, and honorably."

State's Attorney's violation of RPC 3.8 constitutes "misconduct" that "has tainted the entirety of the cases against the Plaintiff, wherein he is not able to receive a hearing free from relief, and all charges are tainted to which Plaintiff is now subject" (Doc. 2, ¶ 14).

The new material contained in this pleading asserts that Miller "has reason to believe that there is information being held in the State's Attorney [sic] office and among the individuals which would negate some if not all the charges against him in this [sic] his various cases"[6] (Doc. 2, ¶ 16). This material includes phone records, communications with the State's Attorney of Franklin County, information relating to the misdemeanor charge, and other communications regarding his charges and his driving (Doc. 2, ¶ 17). This evidence has not been disclosed in discovery.

Miller brings this action pursuant to 28 U.S.C. § 1651, asserting that a "writ for mandamus can be brought to compel an agency or governmental agency to provide or do certain things as required by law for the purpose of insuring justice" (Doc. 2, ¶¶ 15, 20). He seeks an order from this Court requiring all documents, phone records, and conversations related to his case to be "turned over to the Plaintiff or his counsel within the statutory period of time" (Doc. 2, ¶ 19). He does not indicate what statute would set the time limit to which he refers.

**Discussion**

The writ of mandamus has been abolished by court rule. *See* FED. R. CIV. P. 81(b). Nevertheless, there are two federal statutes that may be invoked to obtain a writ of mandamus: 28 U.S.C. § 1361 and 28 U.S.C. § 1651.

The first, 28 U.S.C. § 1361, establishes jurisdiction for a federal district court to

---

[6] This language echoes Illinois Supreme Court Rule 412(c), governing discovery in criminal cases, which directs the State to "disclose to defense counsel any material or information within its possession or control which tends to negate the guilt of the accused as to the offense charged or which would tend to reduce his punishment therefor." The pleading does not cite to this rule, however.

compel a *federal* official or agency "to perform a duty owed to the plaintiff." By its terms, this statute does not apply to *State* officers, employees, or agencies. Thus, it is of no assistance to Miller in this action, and he has not invoked it.

Instead, Miller relies on § 1651, commonly known as the "All Writs Act." Section 1651(a) provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate *in aid of their respective jurisdictions* and agreeable to the usages and principles of law" (emphasis added). Unlike § 1361, § 1651 is only a mechanism by which the Court asserts its jurisdiction; it is not a source of jurisdiction. *United States v. Illinois Bell Telephone Co.*, 531 F.2d 809, 814 (7th Cir. 1976). Herein lies Miller's first problem.

The federal district courts are courts of limited jurisdiction, as Miller's attorney should be aware. *See, e.g.*, 28 U.S.C. §§ 1331, 1332, *et seq*. Federal courts have no authority to grant mandamus relief against state officials, which is what is requested here. *See Robinson v. Illinois*, 752 F. Supp. 248, 248-49 (N.D. Ill. 1990) ("Federal courts have no general power to compel action by state officers[.]") (citing *Davis v. Lansing*, 851 F.2d 72, 74 (2d Cir. 1988); *Van Sickle v. Holloway*, 791 F.2d 1431, 1436 n. 5 (10th Cir. 1986); *Moye v. Clerk, DeKalb County Superior Court*, 474 F.2d 1275, 1276 (5th Cir. 1973) (per curiam); *Haggard v. Tennessee*, 421 F.2d 1384, 1386 (6th Cir. 1970)); *see also In re Campbell*, 264 F.3d 730, 731-32 (7th Cir. 2001) (generally, a federal court has no jurisdiction to "issue mandamus to a state judicial officer to control or interfere with state court litigation"). In particular, a federal district court lacks jurisdiction to issue a mandamus against state officials for violating their duties under state law. *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 469 (7th Cir. 1988); *see also Banks v. People of the State of Illinois*, 258 F. App'x 902, (7th Cir. 2007).

Miller asserts that the Williamson County State's Attorney (whom he does not include among the Defendants) and, presumably, his assistant Defendant Combs and employee Defendant Killman, have failed to turn over material which they have a duty to disclose in discovery under Illinois Supreme Court Rules. *See* ILL. S. CT. R. 412, 415. Such a violation of state law or a state court rule cannot provide a basis for federal court jurisdiction. This Court is not a referee for disputes that belong in state court. This Court has no jurisdiction over such a matter, thus cannot issue the mandamus relief being sought. The petition must therefore be dismissed.

Further, assuming for the sake of argument that jurisdiction did exist in this case, Miller has failed to show any entitlement to the extraordinary remedy he seeks. A petitioner seeking mandamus must show that (1) no other adequate means exist to attain the desired relief, (2) his right to issuance of the writ is clear and indisputable, and (3) the writ is appropriate under the circumstances of his case. *Cheney v. U.S. Dist. Ct.,* 542 U.S. 367, 380-381 (2004). Plaintiff cannot meet this test. He has failed to allege that he has even requested the prosecutor to turn over the material he seeks to discover.[7] The Illinois Circuit Courts have the power to issue orders enforcing discovery obligations in criminal cases, and to sanction counsel for noncompliance. *See* ILL. S. CT. R. 415(g). Miller has made no showing that he would be unable to obtain relief in the court where the criminal charges are pending, or from the higher state courts if that were to fail.[8] While he appears to have the right to obtain the potentially exculpatory material he believes is in the State's possession, he does *not* have a clear and

---

[7] Rule 412(d) directs the State to make the required disclosures "as soon as practicable following the filing of a motion by defense counsel." ILL. S. CT. R. 412(d).

[8] In addition to the right to appeal, a litigant may in appropriate circumstances apply to the state appellate or supreme court for mandamus relief. *See* 705 ILL. COMP. STAT. 25/11; *In re Campbell*, 264 F.3d 730 (7th Cir. 2001); *People ex rel. Baker v. Cowlin*, 607 N.E.2d 1251, 1252 (1992); *People ex rel. Knight v. O'Brien*, 240 N.E.2d 686, 692 (Ill. 1968) (per curiam).

indisputable right to obtain a writ from this Court forcing a state official or agency to disgorge it. In light of all these concerns and circumstances, issuance of a writ by this Court would be highly inappropriate.

This Court lacks jurisdiction to grant the requested mandamus relief. Miller, therefore, has failed to state a claim upon which relief may be granted. The action shall be dismissed with prejudice, and the dismissal falls within the grounds enumerated in 28 U.S.C. § 1915A(b). Accordingly, this dismissal shall also count as a "strike."

This Court has expended considerable resources to consider each of Miller's four actions. The recycled nature of the pleadings, confusing draftsmanship, and most importantly, the lack of legal foundation for the claims, suggest that counsel may have fallen short of making a reasonable inquiry into the merits as required by Federal Rule of Civil Procedure 11(b)(2). His efforts have now earned his client two "strikes" for having brought meritless claims. While counsel's conduct to date does not call for sanctions, he would be well advised to thoroughly explore the legal merits of any future claim for relief he might bring, before he files another case in this Court.

**Disposition**

For the reasons stated above, this mandamus action is **DISMISSED** with prejudice. Plaintiff is **ADVISED** that this dismissal shall count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).

If Plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the

$505.00 appellate filing fee irrespective of the outcome of the appeal.  *See* F‌ED. R. A‌PP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).  Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike."  A timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline.  F‌ED. R. A‌PP. P. 4(a)(4).

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: May 14, 2014**

                                        s/ MICHAEL J. REAGAN
                                        United States District Judge